FRANK D. STRANAHAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ROBERT A. STRANAHAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 13027, 13028. Promulgated January 18, 1929.

*Harry J. Gerrity, Esq.*, and *Thomas O. Marlar, Esq.*, for the petitioners.

*Harold Allen, Esq.*, for the respondent.

1408

OPINION.

TRAMMELL: In the case of Frank D. Stranahan two errors are assigned. First, the action of the Commissioner in disallowing as a deduction claimed for a bad debt in the amount of $98,604.84, arising out of the transactions that the petitioner had with one Earl. Second, the disallowance by the Commissioner of a deduction claimed for a loss in the amount of $15,000 with respect to the Jeffery-DeWitt indebtedness. The latter issue is also involved in the Robert A. Stranahan case.

In the Robert A. Stranahan petition the deduction with respect to the Jeffery-DeWitt transaction is claimed upon the theory that a deduction should be allowed as a loss sustained during the taxable year, not compensated for by insurance or otherwise. In the Frank

D. Stranahan case the deduction is claimed apparently under the theory of a loss sustained during the year.

Since the Jeffery-DeWitt transaction is common to both cases, that assignment of error will be considered and disposed of first.

While in the Robert A. Stranahan case the petitioner relied upon section 214 (a) (4), that is, the loss provision of the statute, instead of 214 (a) (7), the bad-debt provision, in his brief the petitioner relied upon section 214 (a) (7) and made no reference to section 214 (a) (4), and in the Frank D. Stranahan case the petitioner does not state upon what provision of the statute he relies in support of his claim for the deduction with respect to the Jeffery-DeWitt transaction. From all the facts, however, it seems clear that if the deduction is allowable at all, it must be by virtue of section 214 (a) (7) of the Revenue Act of 1921, that is, the bad-debt provision. The Jeffery-DeWitt Co. was indebted to each of the petitioners in the sum of $20,000, which was represented by promissory notes, which debts are claimed to have become worthless in part during the taxable year involved. In order for the petitioners to be entitled to a deduction under 214 (a) (7), it is necessary to show that the debts were not only ascertained to be worthless, but were charged off.

If they were not ascertained to be worthless in part, the deduction is not allowable, and it would not require a discussion as to whether they were charged off within the meaning of the statute.

The first question, then, is whether the debts due by the Jeffery-DeWitt Co. were ascertained by the petitioners to have become worthless in part during the taxable year.

During 1921 each of the petitioners had a debt against the Jeffery-DeWitt Co. in the amount of $20,000, represented by promissory notes. The Jeffery-DeWitt Co. was in serious financial difficulties and was unable to pay its creditors except those having smaller claims. It agreed with its creditors during that year to pay those having debts to the amount of $100 or less in full, and to those having debts up to $400, 25 cents on the dollar in cash. Those having claims in excess of $400 agreed that a new company would be organized to take over the assets and business of the old company and to take preferred stock of the par value of the amount of the debts. These creditors, including the petitioners, organized a creditors' committee and acted through that committee. It was agreed that the Jeffery-DeWitt Co. should go into bankruptcy and that the assets should be sold and that they should be bid in by the creditors' committee. This was done and a new corporation was organized in the early part of 1922 to take over the assets and business of the old Jeffery-DeWitt Co. Robert A. Stranahan agreed to advance money and advanced $120,000, and the Champion Spark Plug Co. agreed to advance as much as $50,000 in

addition to its claim against the company. Robert A. Stranahan was to be in active control of the new company. While the reorganization plan was agreed to in 1921, it was not actually consummated, and the reorganization of the new Jeffery-DeWitt Insulator Co. was not begun until February, 1922. After the arrangement had been made with creditors, the creditors agreed upon the bankruptcy proceedings by sale and purchase, that is to say, " a nominal sale and a nominal purchase satisfying the requirements of law."

The Jeffery-DeWitt Co. manufactured high tension insulators, a considerable portion of the product being sold to the Champion Switch Co., a company which was organized and operated by the Stranahans. In fact, the Champion Switch Co. was organized for the purpose of promoting the sale of the Jeffery-DeWitt insulators. The Jeffery-DeWitt Co. manufactured a superior product, and in the first year of its reorganization, viz, 1922, earned substantial profits, amounting to in excess of $60,000. These profits continued to increase from year to year. In one year dividends were declared. For the other years the profits were permitted to accumulate and were retained in the business in the way of substantial improvements.

Robert A. Stranahan estimated that the preferred stock of the new Jeffery-DeWitt Insulator Co. had no ascertainable value when they received it, but that its value was not in excess of 25 per cent of the par value thereof and upon this estimate deducted, in 1921, 75 per cent of the amount of the debts as having been ascertained to be uncollectible and worthless. Frank D. Stranahan was aware of all the facts, but omitted through oversight to take a similar deduction in his return.

The evidence in the case is not sufficient to convince us that the debts owing by Jeffery-DeWitt Insulator Co. were ascertained to be worthless in part in 1921. It is true that in that year the company was declared a bankrupt and its assets sold to the creditors' committee, but prior to the bankruptcy proceedings and the sale of the assets under such proceedings, the creditors' committee had decided upon the entire plan of reorganization.. It was known that the new company would be immediately organized and that creditors would receive preferred stock for their claims. It was known that Stranahan who was president of the Champion Spark Plug Co., one of the organizers and directing officers of the Champion Switch Co. and other enterprises, would be in active charge and management of the reorganized company. He had already agreed to advance large sums of money, and it was known that the Champion Spark Plug Co. would advance considerable money. The market for the product of the reorganized company was already known and established and it was known before the close of 1921 that immediately thereafter

the petitioners would receive preferred stock to the extent of the par value of their claim in this new company.

From all the evidence in the case we are of the opinion that there is not a preponderance of the evidence to the effect that the claims were ascertained to be worthless in part in 1921. The new stock to be received in the future had no ascertained or readily realizable market value in 1921. Nothing occurred in 1921, in view of all the facts and circumstances of the case, by which to determine the extent to which the indebtedness was uncollectible, if it was uncollectible to any extent.

The action of the respondent, therefore, in disallowing the deduction claimed with respect to the debt of the Jeffery-DeWitt Insulator Co. is approved.

With respect to the Frank D. Stranahan claim for a bad debt deduction on account of the Clarence Earl transaction, it appears that Stranahan first advanced collateral in order to protect Earl's account with his brokers, then later purchased from the brokers the stock which the securities had been deposited to cover on margin, leaving Earl indebted to Stranahan as the result of the transaction in the amount set out in our findings of fact. The contract between the petitioner and Earl is set out in our findings of fact. This contract indicates that Earl retained an equity of redemption in the stock which the petitioner purchased. In other words, the petitioner, in fact, held the stock which he acquired as security for Earl's indebtedness. It is true, the market value of the security during the taxable year involved did not equal the amount paid therefor together with the additional amounts paid by Stranahan to satisfy Earl's indebtedness. This security, however, had a fluctuating value and increased and decreased from time to time in market value and it was not ascertained during the taxable year whether the securities held by petitioner would not increase in value before the expiration of the contract between the parties. The contract was dated October 22, 1921, and ran for at least a period of 12 months, provided Earl kept up the interest payments. The agreement provided that Earl admitted his obligation to make good the loss to Stranahan, with interest, and he desired that Stranahan buy the stock and carry the same in the hope that he, Earl, might benefit by a rise in price. These facts lead us to the conclusion that Stranahan did not become the beneficial owner of the securities acquired by him, but that he held them subject to Earl's equity of redemption and that he acquired them as security.

Under the facts of this case, the difference between the amount of the debt and the market value of the securities at the end of the taxable year involved does not justify a deduction on account of a debt ascertained to be worthless in part under the 1921 Revenue Act.

The petitioner did not dispose of the securities in order to ascertain or realize a definite loss. Before the expiration of the contract it may well be that the petitioner might have disposed of the securities at an amount sufficient to pay the entire indebtedness owing by Earl.

It is our opinion, from the evidence, that Earl was insolvent before the end of the taxable year and that the only means the petitioner had of collecting his indebtedness from him was the securities which he had, but in our opinion the evidence is not sufficient to warrant us in finding that the action of the respondent was erroneous in disallowing the deduction claimed.

*Judgment will be entered under Rule 50.*